IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| LAWRENCE K. BUTCHER AND JENNIFER BUTCHER | PLAINTIFFS |
| VERSUS | CIVIL ACTION NO. 1:06cv423KS-MTP |
| ALLSTATE INSURANCE COMPANY | DEFENDANT |
| AND | |
| R. H. CONSTRUCTION, INC. | INTERVENOR |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion to Strike Plaintiffs' Experts **[#106]** filed by the defendant. The court, having reviewed the motion, the response, the pleadings and exhibits on file and being otherwise fully advised in the premises finds that the motion is not well taken and should be denied. The court specifically finds that Allstate has moved to strike the plaintiffs' experts in cause and origin and accounting for various disclosure violations and under the *Daubert* principles. It also is seeking to exclude Dr. Butcher's treating physician for failing to provide medical records and a written opinion. Allstate also seeks to exclude the testimony of several non-expert professional witnesses.

## ADMISSIBILITY OF EXPERT TESTIMONY

Since the Supreme Court's decision in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed 2d 469 (1993), federal courts have

heeded the admonition set forth therein that they should take seriously their role as "gatekeepers" of testimony offered by expert witnesses in federal courts. The initial reaction to *Daubert* was that it was a victory for the *Daubert* plaintiffs in that it vacated a Ninth Circuit opinion which upheld the exclusion of the plaintiff's experts in one round of the Bendectin birth defect cases. The Supreme Court in *Daubert* said the *Frye* general acceptance test for expert testimony had been superseded by Rule 702 of the Federal Rules of Evidence which went into effect in 1975. Rule 702 provided at the time:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

A primary requisite of the rule is that the evidence or testimony "assist the trier of fact to understand the evidence or determine a fact in issue." The commentators universally agree that the effect of *Daubert* was not the loosening of the allowance of expert testimony but in fact a tightening thereof. In fact when *Daubert* was vacated and remanded to the Ninth Circuit, the Ninth Circuit again upheld the district court's exclusion of the plaintiff's expert witnesses based on the new standard enunciated in *Daubert*. *Wm. Daubert, et al v. Merrell Dow Pharmaceuticals, Inc.*, 43 F. 3d 1311 (9th Cir. 1995). Thereafter the United States Supreme Court denied certiorari. *Daubert, et al v. Merrell Dow Pharmaceuticals, Inc.*, 516 U.S. 869, 116 S.Ct. 189, 133 L.Ed.2d 126 (1995).

The cases and commentaries interpreting *Daubert* are legion at this point. The Supreme Court in *Daubert* enumerated several factors to be considered by the trial

court in determining whether or not a particular expert witness's testimony was relevant and reliable to the point that it should be allowed in federal court. Those factors are not exclusive and were merely presented as a guideline. The federal courts were instructed that the *Daubert* standard is "a flexible one" to be applied according to the facts and circumstances of each individual case. 509 U.S. at 594.

After *Daubert*, there was much discussion as to whether or not it applied merely to cases involving scientific knowledge or whether it should be expanded to include all expert testimony regardless of its scientific basis. The Supreme Court answered that question in *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167, 143 L.Ed.2d 238 (1999). The *Kumho* court held

> We conclude that *Daubert's* general holding--setting forth the trial judge's general "gatekeeping" obligation--applies not only to testimony based on "scientific" knowledge, but also to testimony based on "technical" and "other specialized" knowledge.

119 S. Ct. at 1171. Ultimately "the objective of that [gatekeeping] requirement is to insure the reliability and relevancy of expert testimony." *Kumho*, 119 S. Ct. at 1176. In *Kumho* "the relevant issue was whether the expert could reliably determine the cause of [the] tire's separation." 119 S. Ct. at 1177.

This court has been instructed by *Kumho* interpreting *Daubert* that the opinions stated by Buchan are not the object of the relevancy and reliability determination but instead the court is required to determine the reliability of his basis for arriving at those conclusions. 119 S.Ct. at 1177. The factors set forth in *Daubert* and recited in *Kumho* include whether the theory or technique can be and has been tested; whether or not it

has been subjected to peer review and publication; whether, in respect to a particular technique, there is a high known or potential rate of error; whether there are standards controlling the technique's operation and whether the theory or technique enjoys general acceptance within a relevant scientific community.

This court recognizes that several of the factors listed above are not relevant to a determination of the issue before this court. Therein lies the flexibility of the gatekeeping responsibility as mandated by the Supreme Court. As the Fifth Circuit has noted, several prior opinions on admissibility of expert testimony placed undue emphasis on *qualifications* of a particular expert witness over the *reliability* of that expert's proposed testimony and such reflected a "pre-*Daubert*" sensibility. *See, Watkins v. Telsmith*, 121 F. 3d 984, 992 (5th Cir. 1997). In this age of "post-*Daubert*" sensibility, especially as enlightened by the United States Supreme Court's pronouncement in *Kumho*, the trial courts were instructed to carefully execute the responsibility placed upon the court as a "gatekeeper" of proposed expert testimony.

In response to *Daubert* and the many cases applying *Daubert*, including *Kumho*, Federal Rule of Evidence 702 was amended effective December 1, 2000, by adding three requirements for the admissibility of expert testimony. *See Hodges v. Mack Trucks Inc.*, 474 F.3d 188 (5th Cir. 2006). As amended, Rule 702 now reads:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The *Daubert* factors remain relevant to the determination of the reliability of expert testimony under Rule 702, as amended. *See Guy v. Crown Equipment Corp.* 394 F.3d 320, 325 (5th Cir. 2004). In assessing the basis of an expert's proposed testimony, the Fifth Circuit has held that an "expert's testimony [can be] based mainly on his personal observations, professional experience, education and training." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002). Ultimately, however, the question of whether an expert's testimony is reliable is a fact-specific inquiry. *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir.2004). The proponent of the expert testimony must prove reliability by a preponderance of the evidence. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir.1998) (en banc). "It is then the district court's responsibility to 'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Dart v. Kitchens Bros. Mfg. Co.*, 253 Fed.Appx. 395, 398 (5th Cir. 2007)(*quoting Kumho Tire*, 526 U.S. at 152, 119 S.Ct. 1167).

## John Lentini/ Scientific Fire Analysis, LLC

Although Allstate admits that the report of John Lentini is signed and a Curriculum Vitae, which includes his training, qualifications and publications, has been produced, his report refers to reliance on "learned treatises on the generally accepted methodology for fire scene investigation and for the laboratory analysis of fire debris. These learned treatises were not produced nor did the plaintiffs provide a list of prior

testimony of John Lentini as required.

Lentini, a highly qualified fire expert, stated that he relied on NFPA 921 for the general standards for accepted methodology for fire scene investigation and fire debris analysis. It is well recognized that this is the most generally accepted standard for methodology for exactly what Lentini was doing and Allstate's protestations otherwise are nothing but a red herring.

As to Lentini's failure to include a list of prior cases in which he has testified, this is a technical violation of the disclosure rule. However, counsel has included in his affidavit a satisfactory explanation as to why the list was not included and Allstate has not been prejudiced thereby since the list was produced more than three months prior to trial. Lentini has testified in more than two hundred cases including civil and criminal, state and federal and for plaintiff and defendant.

### C. Mark Bullock, CPA

Bullock is the plaintiffs' accounting expert. Allstate complains that it did not receive a signed copy of Bullock's expert report. This has been rectified and Allstate has shown no prejudice. Allstate also complains that Bullock did not list his qualifications and what he relied upon in reaching his conclusions. The record does not bear Allstate out on this point.

Finally, Allstate complains that it did not receive a copy of cases Bullock had previously testified in. Counsel for plaintiffs admits that he failed to properly inquire of Bullock as to this issue. Once again this is a technical violation that has since been

corrected and Allstate has not offered any showing as to how it was prejudiced by this.

### Jerry Woolum, MD

Dr. Woolum is Dr. Butcher's treating physician and was identified as such in discovery. Allstate complains that Dr. Woolum did not produce an expert report. However, it admits that treating physicians are not required to. Next, Allstate complains that Dr. Woolum has not produced any medical records to support his testimony. However, Allstate has had an executed release since September 2004 and was not able to reach a consensus with plaintiffs' counsel to timely depose Dr. Woolum.

### Professionals not Expected to Testify as Experts

Allstate attacks several witnesses identified as professionals whom the plaintiffs have indicated will testify as lay witnesses. They include Tom Royals, Geneda Gray, Lana Brooks. The plaintiffs' counsel has indicated that the professional witnesses were identified only because they are professionals. Their testimony will be limited to lay testimony as per the representations of counsel. Allstate also attacks two contracting experts identified to respond to the Intervenor's claims. The contracting experts are no concern of Allstate as they will not provide testimony concerning issues related to it.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion to Strike Plaintiffs' Experts **[#106]** filed by the defendant is denied.

SO ORDERED AND ADJUDGED this the 5th day of February, 2009.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE